UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X
DONNA FINNIGAN,

      CV: 20-2837 (JMA) (ST)

    Plaintiff,

  -against-     **FIRST AMENDED COMPLAINT**

MATTITUCK-CUTCHOGUE UNION FREE
SCHOOL DISTRICT, JILL GIERASCH, and **JURY TRIAL DEMANDED**
DR. KATHLEEN DEVINE, (in their individual and
official capacities pursuant to NYEL 290 *et seq.*),

    Defendants.
_____X

  Plaintiff, DONNA FINNIGAN ("Plaintiff"), by her attorneys SCOTT MICHAEL MISHKIN P.C., complaining of the Defendants, alleges as follows:

### PRELIMINARY STATEMENT

  This case is brought (1) pursuant to the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA") for Mattituck-Cutchogue Union Free School District's ("the District") discrimination against Plaintiff on the basis of her disability of Multiple Sclerosis ("MS") and perceived cognitive/mental disability resulting from her MS; (2) pursuant to the New York State Human Rights Law, New York Executive Law §§ 290 *et seq.* ("NYEL") for the District's discrimination against Plaintiff on the basis of her disability/perceived disability; and (3) pursuant to NYEL for Jill Gierasch ("Gierasch") and Dr. Kathleen Devine's ("Devine") aiding, abetting, inciting and participating in the discrimination against Plaintiff on the basis of her disability/perceived disability.

## JURISDICTION

FIRST: The jurisdiction of the Court over this controversy is based upon 28 U.S.C. § 1331, as this matter is raised under 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. §§ 12111 *et seq*.

SECOND: Plaintiff timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") within Three Hundred (300) days of the discriminatory acts alleged herein.

THIRD: The EEOC issued a Notice of Right to Sue on April 28, 2020, and this action was brought within Ninety (90) days of the EEOC's issuance of that Notice.

FOURTH: This Court therefore has jurisdiction over this matter.

FIFTH: The Court also has supplemental jurisdiction over this case pursuant to 28 U.S.C. § 1367(a), as Plaintiff's NYEL claims form part of the same case and controversy.

## VENUE

SIXTH: The unlawful practices alleged below were committed within the State of New York, County of Suffolk.

SEVENTH: At the time of the unlawful practices, Plaintiff was a resident of Suffolk County in the Eastern District of the United States District Court of New York.

EIGHTH: Defendant's principal place of business, and the location at which Plaintiff was and currently is employed, is the Mattituck-Cutchogue Union Free School District located at 385 Depot Lane, Cutchogue, New York 11935.

NINTH: The locations at which the causes of action herein arose are in the County of Suffolk in the Eastern District of the United States District Court of New York.

TENTH: This Court is hereby proper venue under 28 U.S.C. § 1391 (b).

## PARTIES

ELEVENTH: Plaintiff is an "employee" of the District as defined by the ADA.

TWELFTH: At all times relevant herein, the District was Plaintiff's "employer" as defined by the ADA in that it employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks.

THIRTEENTH: During all times relevant to this action, Plaintiff was a member of a protected class in that she was and is a female with a qualified disability of Multiple Sclerosis ("MS") which due to the nature, duration, and severity of her disability, substantially limits her from one or more of her major life activities, including but not limited to, working and at times, walking.

FOURTEENTH: Despite her diagnosed disability, Plaintiff, with reasonable accommodations, has satisfactorily and continually performed the duties and job responsibilities of her position at the District since she was hired on or about September 1, 1998.

FIFTEENTH: The District was and is aware of Plaintiff's record of disability, and perceived Plaintiff to have a disability that substantially limited one or more of her major life activities, as Plaintiff has fully disclosed to the District, as well as her supervisors, that she suffers from MS, and has made several requests for accommodations from the District throughout her employment.

SIXTEENTH: During all times relevant herein, Jill Gierasch was the District's Superintendent and aided, abetted and/or actually participated in the conduct giving rise to Plaintiff's claims of disability and perceived disability discrimination in violation of the NYEL.

SEVENTEENTH: Gierasch had the power to hire and fire and carry out other

personnel decisions at the District, and did in fact carry out personnel decisions against Plaintiff, including but not limited to, removing her from her 4th grade teaching class on the basis of a perceived mental disability, stripping Plaintiff of her title and material responsibilities, assigning Plaintiff to a diminished title, and removing all of Plaintiff's previously granted medically supported accommodations.

EIGHTEENTH: Gierasch actually participated in the conduct giving rise to plaintiff's discrimination claims as alleged herein and is thereby personally liable for her discriminatory treatment against plaintiff under the NYEL.

NINETEENTH: During all times relevant herein, Dr. Kathleen Devine was the Principal at the District's elementary school and aided, abetted and/or actually participated in the conduct giving rise to Plaintiff's claims of disability and perceived disability discrimination in violation of the NYEL.

TWENTIETH: Devine had the power to hire and fire and carry out other personnel decisions at the District, and did in fact carry out personnel decisions against Plaintiff, including but not limited to, removing her from her 4th grade teaching class on the basis of a perceived mental disability, stripping Plaintiff of her title and material responsibilities, assigning Plaintiff to a diminished title, and removing all of Plaintiff's previously granted medically supported accommodations.

TWENTY-FIRST: Devine actually participated in the conduct giving rise to plaintiff's discrimination claims as alleged herein and is thereby personally liable for her discriminatory treatment against plaintiff under the NYEL.

**FACTS**

TWENTY-SECOND: Plaintiff began her employment at the District on or about

September 1, 1998 as a 5th grade teacher in the District's elementary school.

TWENTY-THIRD: In September 2003, Plaintiff began teaching 4th grade at the District's elementary school and continued to do so until March 2018.

TWENTY-FOURTH: Throughout plaintiff's employment as a teacher at the District, Plaintiff has always performed her job well and has always received positive performance evaluations.

TWENTY-FIFTH: In or about 2011, Plaintiff was diagnosed with Multiple Sclerosis ("MS").

TWENTY-SIXTH: Plaintiff's MS diagnosis limits her from one or more of her major life activities, including but not limited to, working, and at times, walking, especially for long distances.

TWENTY-SEVENTH: Plaintiff suffers from "foot-drop" as a result of her MS, which is a weakness or paralysis of the muscles involved in lifting the front of the foot.

TWENTY-EIGHTH: This condition makes it very difficult for Plaintiff to walk long distances, has resulted in Plaintiff walking with a limp, and often has adverse effects on Plaintiff's balance while walking.

TWENTY-NINTH: Additionally, as a direct result of the MS, Plaintiff has difficulty with heat, which exacerbates her MS conditions and results in uncontrollable nausea.

THIRTIETH: Plaintiff also suffers from other MS related conditions which require her to always be close to a restroom.

THIRTY-FIRST: The District has been aware of Plaintiff's MS and resulting conditions for many years, all of which have been supported by medical documentation.

THIRTY-SECOND: In fact, in the past, the District had made temporary

accommodations for Plaintiff including the installation of an air conditioner in her classroom, assigning Plaintiff to a classroom with a restroom in it, and giving Plaintiff a permanent classroom so she did not have to travel throughout the building to teach her classes.

THIRTY-THIRD: During the 2017/2018 school year, Plaintiff was assigned a student in her 4th grade class with multiple behavioral issues. Some examples of this student's behavioral issues included, but were not limited to, the following:

- Calling out during class;
- Interrupting students;
- Striking students;
- Referring to students as "pussies" and "faggots," and
- Pulling down students' pants in the classroom.

THIRTY-FOURTH: Plaintiff met with Devine on several occasions to discuss the student's behavioral issues but no action was ever taken by the District to resolve these issues.

THIRTY-FIFTH: Plaintiff even met with the student's parents in hope that these issues would be resolved, but nothing changed and the student continued to be an issue in Plaintiff's class.

THIRTY-SIXTH: Despite Plaintiff's numerous requests for assistance, the Defendants took no action to rectify the situation.

THIRTY-SEVENTH: Rather, in May 2018, the Defendants placed a counseling memorandum in Plaintiff's personnel file in relation to her complaints.

THIRTY-EIGHTH: Plaintiff's similarly situated co-workers did not receive reprimands and/or write-ups for engaging in similar conduct to Plaintiff. In fact, to Plaintiff's knowledge, her colleagues' complaints about behavioral students never went ignored.

THIRTY-NINTH: The Defendants believed that Plaintiff was the problem, rather than

the student, and perceived Plaintiff to be suffering from mental illness and/or cognitive disability directly related to her MS.

FORTIETH: As a result of the District's inaction, Plaintiff was required to do more work and preparation than her similarly situated co-workers, and it became very difficult to teach her class with this particular student's constant disruptions.

FORTY-FIRST: On or about June 21, 2018, Plaintiff sent a letter to the student's parents as a final attempt to resolve the issues she was having in the classroom. The District was copied on the letter as well.

FORTY-SECOND: Despite Plaintiff's letter, no action was taken, and Plaintiff was called to a meeting where she faced further reprimand and admonishment from Gierasch.

FORTY-THIRD: At the meeting, Plaintiff was disciplined and told that going forward she was prohibited from speaking to any parents about her students' disciplinary issues.

FORTY-FOURTH: As a teacher, it was imperative for Plaintiff to have the ability to communicate with her students' parents in order for her to properly perform the essential functions of her job.

FORTY-FIFTH: On or about August 16, 2018, Defendants advised Plaintiff that she was required to undergo a § 913 psychological evaluation.

FORTY-SIXTH: To Plaintiff's knowledge, Plaintiff's similarly situated non-disabled co-workers were not required to undergo psychological evaluations for engaging in the same and/or similar conduct as Plaintiff, i.e., bringing complaints about their student's disruptive behavioral issues and communicating with parents. Nor were Plaintiff's co-workers prohibited from communicating with their students' parents and/or disciplined for doing so.

FORTY-SEVENTH: Furthermore, Defendants Gierasch and Devine immediately placed on home assignment, blocked Plaintiff from the District's email network, and disabled Plaintiff's access to the District's and her students' files.

FORTY-EIGHTH: These discriminatory actions were taken against Plaintiff by Defendants Gierasch and Devine due to what they perceived as a mental illness resulting from Plaintiff's MS diagnosis.

FORTY-NINTH: On or about September 20, 2018, Plaintiff's psychological evaluation was conducted by Dr. Randall Solomon, a doctor hired by Defendant Gierasch.

FIFTIETH: Shortly thereafter, Dr. Solomon concluded that Plaintiff suffered from neurological and cognitive changes resulting from her MS, and that Plaintiff was at moderate risk of engaging in unsafe behavior in her classroom.

FIFTY-FIRST: Dr. Solomon also recommended that Plaintiff undergo 12-16 weeks of mental health treatment before returning to a classroom.

FIFTY-SECOND: Upon information and belief, Dr. Solomon's findings were based on fabricated documentation provided by Defendants Gierasch and Devine, as well as Defendant Gierasch's directive to Dr. Solomon to find that Plaintiff was suffering from a mental disability that deemed her unfit to teach.

FIFTY-THIRD: Defendants Gierasch and Devine perceived Plaintiff to have a mental illness/disability resulting from her MS, which is evident in the fact that Defendant Gierasch directed Plaintiff to remove all of her belongings from her 4th grade classroom in August 2018, more than a month before Plaintiff underwent the psychological evaluation with Dr. Solomon.

FIFTY-FOURTH: Defendants Gierasch and Devine then stripped Plaintiff of her 4th

grade class and all of her material responsibilities as a teacher based on her perceived mental illness. Plaintiff's class and responsibilities were re-assigned to another teacher.

FIFTY-FIFTH: Defendants then directed Plaintiff to remain out of work until November 2018, at which point she returned to the District in the diminished title of AIS math support person.

FIFTY-SIXTH: After 20 years of teaching at the District without issue, Plaintiff was forced to return to a less distinguished title with greatly diminished job responsibilities.

FIFTY-SEVENTH: Plaintiff's responsibilities as a tenured 4th grade teacher were stripped from her and she was given the responsibilities of a newly hired support person/aide.

FIFTY-EIGHTH: Plaintiff's diminished title and responsibilities severely harmed her reputation at the District and caused her humiliation, as well as hindered her opportunities at career advancement.

FIFTY-NINTH: In addition to her diminished title and responsibilities, all of Plaintiff's previously granted accommodations were stripped from her.

SIXTIETH: Specifically, plaintiff was no longer assigned to a classroom with air conditioning and/or a restroom, which was in direct contradiction to her medically supported accommodation requests.

SIXTY-FIRST: Furthermore, Plaintiff was no longer assigned to a permanent classroom and was required to travel throughout the school all day from classroom to classroom.

SIXTY-SECOND: These changes to Plaintiff's schedule and removal of her medically supported accommodations exacerbated Plaintiff's MS symptoms and created physical challenges for Plaintiff.

SIXTY-THIRD: Defendants were aware of Plaintiff's physical limitations, as well

as the adverse effects the removal of her accommodations would have on her.

SIXTY-FOURTH: As a result of Defendants' discriminatory action of assigning Plaintiff to a less distinguished title, stripping her of all of her responsibilities, and removing her medically supported accommodation, Plaintiff suffered both physical and mental distress.

### AS AND FOR PLAINTIFF'S CLAIMS OF DISABILITY DISCRIMINATION AGAINST THE DISTRICT ARISING UNDER THE ADA AND NYEL

SIXTY-FIFTH: Plaintiff repeats and realleges each and every allegation contained in Paragraphs FIRST through SIXTY-FOURTH.

SIXTY-SIXTH: During all times relevant herein, Plaintiff was a member of a protected class in that she is an individual with a qualified disability of MS, which limits her in a broad range of major life activities, including but not limited to, working, and at times, walking.

SIXTY-SEVENTH: Plaintiff, with reasonable accommodations, was able to perform the essential functions of her job at Defendants and has done so continually receiving positive performance evaluations since the start of her employment on September 1, 1998.

SIXTY-EIGHTH: Defendants willfully discriminated against Plaintiff based upon her disability of MS, and based upon a perceived mental/cognitive disability resulting from her MS, in direct violation of the ADA and the NYEL § 290 *et seq*.

SIXTY-NINTH: Plaintiff suffered adverse employment actions in that the Defendants stripped her of her title as a tenured 4th grade teacher based upon a perceived mental illness, stripped Plaintiff of all of her material responsibilities as a teacher, re-assigned Plaintiff to the diminished title and responsibilities of AIS support person, and removed all of Plaintiff's previously granted and medically supported accommodations.

SEVENTIETH: As a result of Defendants' discriminatory conduct, Plaintiff

10

suffered humiliation among her peers and damage to her reputation, as well as physical and mental distress.

### AS AND FOR PLAINTIFF'S CLAIMS OF DISABILITY DISCRIMINATION AGAINST DEFENDANTS GIERASCH AND DEVINE ARISING UNDER THE NYEL

SEVENTY-FIRST: Plaintiff repeats and realleges each and every allegation contained in Paragraphs FIRST through SEVENTIETH.

SEVENTY-SECOND: During all times relevant herein, Plaintiff was a member of a protected class in that she is an individual with a qualified disability of MS, which limits her in a broad range of major life activities, including but not limited to, working, and at time, walking.

SEVENTY-THIRD: Plaintiff, with reasonable accommodations, was able to perform the essential functions of her job at Defendants and has done so continually receiving positive performance evaluations since the start of her employment on September 1, 1998.

SEVENTY-FOURTH: Defendants Gierasch and Devine willfully discriminated against Plaintiff, as alleged herein, based upon her disability of MS, and based upon a perceived mental/cognitive disability resulting from her MS, in direct violation of the ADA and the NYEL § 290 *et seq*.

SEVENTY-FIFTH: Plaintiff suffered adverse employment actions in that the Defendants Gierasch and Devine stripped Plaintiff of her title as a tenured 4th grade teacher based upon a perceived mental illness, stripped Plaintiff of all of her material responsibilities as a teacher, re-assigned Plaintiff to the diminished title and responsibilities of AIS support person, and removed all of Plaintiff's previously granted and medically supported accommodations.

SEVENTY-SIXTH: As a result of Defendant Gierasch and Devine's discriminatory

conduct, Plaintiff suffered humiliation among her peers and damage to her reputation, as well as physical and mental distress.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

1. For all damages recoverable as a matter of law for the District's discrimination against Plaintiff in violation of the ADA;

2. For all damages recoverable as a matter of law for Gierasch's discrimination against Plaintiff in violation of the ADA;

3. For all damages recoverable as a matter of law for Devine's discrimination against plaintiff in violation of the ADA;

4. For reasonable attorney's fees and costs; and

5. For such other further relief as the Court may deem just and proper.

## JURY DEMAND

**Plaintiff hereby demands a trial by jury of all issues in this action.**

Dated: Islandia, New York
December 11, 2020

**SCOTT MICHAEL MISHKIN, P.C.**

/s/Scott Michael Mishkin
By: Scott Michael Mishkin, Esq.
One Suffolk Square, Suite 240
Islandia, New York 11749
Telephone: 631-234-1154
*Attorneys for Plaintiff*