**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

DONNA FINNIGAN,

                            Plaintiff,          **REPORT AND RECOMMENDATION**

       v.                                     20-cv-02837 (JMA) (ST)

MATTITUCK-CUTCHOGUE UNION FREE
SCHOOL DISTRICT, JILL GIERASCH, and
DR. KATHLEEN DEVINE,

                          Defendants.
-----------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

On June 26, 2020, Plaintiff Donna Finnigan ("Plaintiff") commenced this action and subsequently filed her First Amended Complaint ("FAC") against Defendants Mattituck-Cutchogue Union Free School District ("District"), Jill Gierasch ("Superintendent Gierasch" or "Gierasch"), and Dr. Kathleen Devine ("Principal Devine" or "Devine") (collectively, "Defendants"). Plaintiff alleged that the District discriminated against her under the Americans with Disabilities Act of 1990 ("ADA") and New York Executive Law ("NYEL"); and that Defendants Giersach and Devine aided, abetted, incited and participated in such unlawful discrimination under the NYEL. Defendants moved to dismiss the FAC. The Honorable Joan M. Azrack referred Defendants' Motion to Dismiss to the undersigned to issue a Report and Recommendation.

For the reasons set forth below, this Court respectfully recommends that Defendants' Motion be GRANTED.

I.  **BACKGROUND**

   A. **Factual Background**

The relevant facts, as culled from the pleadings, are as follows: On September 1, 1998, Plaintiff commenced her employment as a fifth-grade teacher in the District's elementary school. FAC at 3-4, Dkt. No. 16.  Subsequently, in September 2003, Plaintiff began teaching in the District's fourth grade class and continued to do so until March 2018.  FAC at 4, Dkt. No. 16. Defendant Gierasch served as the District's Superintendent and Defendant Devine was the District's Principal.  *Id*.

In 2011, Plaintiff was diagnosed with multiple sclerosis ("MS").  FAC at 5, Dkt. No. 16. As a result of her MS, Plaintiff developed various limitations that affected her activities of daily living including difficulty in walking for long distances, working, requiring close proximity to a restroom, and having trouble with heat resulting in uncontrollable nausea.  *Id*. Plaintiff alleges that she also suffered from a "foot-drop" condition because of her MS, which affected her balance while walking.  *Id*.  To accommodate Plaintiff's needs, the District made temporary arrangements for her including installing an air conditioner in her classroom, assigning her to a classroom with a restroom, and assigning her a permanent classroom so she did not have to travel throughout the building to teach her classes.  FAC at 5-6, Dkt. No. 16.

During the 2017/2018 school year, Plaintiff was assigned a student ("Student") in her fourth-grade class who displayed inappropriate behavior.  FAC at 6, Dkt. No. 16.  Some examples of the Student's conduct included calling-out during classes, interrupting students, striking students, referring to students as "pussies" and "faggots," and pulling down other students' pants in the classroom.  *Id*.  Plaintiff alleges that she met with Principal Devine on several occasions to discuss the Student's conduct, but the District took no action.  *Id*.  Plaintiff

further alleges that she was required to do more work and preparation than her similarly situated co-workers, and it became very difficult for her to teach her class with the Student's constant disruptions. FAC at 7, Dkt. No. 16.

On April 24, 2018, Plaintiff met with the Student's parents and advised them about the various incidents in her classroom. Defs.' Mem. of Law at 3; Defs.' Decl., Ex B at 3. Plaintiff also sent a letter to the Student's parents, wherein Plaintiff admittedly labeled the Student a "bully" numerous times because she wanted the parents to understand her position regarding their child. Defs.' Mem. of Law at 3-5; Defs.' Decl., Ex. B at 7. Plaintiff further admits that she had asked the Student how he would feel if multiple students slapped the Student on his forehead, in response to the complaint that the Student had been slapping their foreheads under the guise of an "Egyptian Hello." Defs.' Decl., Ex. B at 7. Plaintiff also directed the Student to maintain eye contact with his classmates as they took turns sharing their negative feelings about the Student in a "guided manner;" and gave the Student a recess detention that included sitting in gazebo during recess time. *Id* at 3-4.

The Student's parents met with Principal Devine to discuss their concerns regarding what Plaintiff had shared at the April 2018 meeting. Defs.' Mem. of Law at 3-5; Defs.' Decl., Ex. B. at 5. Principal Devine then met with Plaintiff to address the Student's family concerns. *Id*. Plaintiff reiterated what she told the Student's parents to Principal Devine. *Id*. Troubled by Plaintiff's "bizarre" conduct and manner of handling the Student, Defendants placed a counseling memorandum in Plaintiff's personnel file believing that it was Plaintiff, and not the Student, who was the main problem. Defs.' Mem. of Law at 3.

According to Plaintiff, since the District continued not to act against the Student, Plaintiff took it upon herself to send a letter to the Student's parents, dated June 21, 2018, to further

3

address the Student's issues. *Id*. In response to her letter, Plaintiff was called into a meeting with Superintendent Gierasch. FAC at 7. Dkt. No. 16. Plaintiff alleges that she was admonished and directed to not contact any students' parents regarding disciplinary issues. *Id*. However, Defendants argue that Plaintiff was not prohibited from contacting other students' parents about behavioral issues, but that she had to first discuss it with the District administration. Defs.' Mem. of Law at 3-4; Defs.' Decl., Ex. B. at 8. Defendants also point to Plaintiff's allegations made before the U.S. Equal Employment Opportunity Commission ("EEOC") and note that Plaintiff averred that her June 2018 letter was simply a response to the counseling memorandum that was placed in her file. Defs.' Mem. of Law at 3.

In August 2018, Defendants advised Plaintiff that she was required to undergo a psychological evaluation pursuant to NYEL § 913. *Id* at 4. On September 20, 2018, Dr. Randall Solomon, a doctor hired by Superintendent Gierasch, conducted Plaintiff's psychological evaluation. *Id*. Shortly thereafter, Dr. Solomon concluded that Plaintiff suffered from neurological and cognitive changes resulting from her MS, and that Plaintiff was at moderate risk of engaging in unsafe behavior in her classroom. *Id*. Dr. Solomon also recommended that Plaintiff undergo 12-16 weeks of mental health treatment before returning to a classroom. *Id*.

Pursuant to Dr. Solomon's recommendations, Defendants directed Plaintiff not to return to work until November 2018, at which point her duties were re-assigned and title modified to that of a Math AIS. FAC at 8-9, Dkt. No. 16. Plaintiff alleges that Defendants Gierasch and Devine "stripped" Plaintiff of her fourth-grade class, gave her a less distinguished title, and altered her material responsibilities as a teacher based on her perceived mental illness. *Id*.

In January 2019, Plaintiff filed a charge of discrimination with the EEOC. On April 28, 2020, Plaintiff received a Right to Sue letter following her EEOC charge. FAC at 2, Dkt. No. 16.

4

### B. Procedural Posture

Plaintiff commenced this action against the District alleging unlawful discrimination pursuant to the ADA and NYEL; and against Gierasch and Devine alleging aiding, abetting, inciting, and participation in such discrimination under the NYEL. FAC, Dkt. No. 16. On October 20, 2020, a pre-motion conference was held before the Court where Plaintiff discontinued this action against Dr. Randall Solomon. Dkt. No. 14. Subsequently, Plaintiff filed her FAC against the remaining Defendants. Dkt. No. 16. Plaintiff abandoned her due process claims under 42 U.S.C. § 1983. *Id*. Plaintiff proceeded only on her ADA and NYEL claims. *Id*. Defendants filed the instant Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim; and pursuant to NYEL § 3813 for failure to serve a Notice of Claim.

## II. LEGAL STANDARD

When assessing a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint states a legally cognizable claim by making allegations that, if proven, would show that the plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint successfully states a claim when there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

There are "[t]wo working principles" that guide this analysis: "First, the court must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party," and "[s]econd, only a complaint that states a plausible claim for relief survives a

5

motion to dismiss, and this determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Giambrone v. Meritplan Ins. Co.*, 13-CV-7377 (MKB) (ST), 2017 WL 2303980, at *3 (E.D.N.Y. Feb. 28, 2017) (internal quotation marks, citation omitted), *adopted by* 2017 WL 2303507 (E.D.N.Y. May 24, 2017). Although this Court is limited to facts as stated in the complaint, it may consider exhibits or documents incorporated by reference. *See Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995). The courts may also take judicial notice of the administrative proceedings including those before the EEOC. *Falcon v. City Univ. of New York*, 263 F. Supp. 3d 416, 423-24 (E.D.N.Y. 2017).

## III.   DISCUSSION

### A. Plaintiff's Discrimination Claim under the ADA

Plaintiff's first cause of action against the District is that pursuant to the ADA, the District willfully discriminated against Plaintiff based upon her MS disability. *See generally* FAC, Dkt. No. 16; Pl.'s Opp. The District argues for dismissal of the ADA discrimination claim on the grounds that the FAC fails to state a cause of action. *See generally* Defs.' Mot. Dis.; Defs.' Rep.

The ADA makes it unlawful for employers to discriminate against employees on account of a disability. *Hernandez v. International Shoppes*, LLC, 100 F.Supp.3d 232, 250 [E.D.N.Y 2015]. To establish a prima facie case of discrimination under the ADA, a plaintiff must show: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) plaintiff was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) plaintiff suffered an adverse employment action; and (5) the adverse action was imposed because of her disability."

6

*Smith v. North Shore–Long Island Jewish Health System*, 286 F. Supp. 3d 501 (E.D.N.Y. 2018) (quoting *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015)). The complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss. *Lebowitz v. New York City Department of Education*, 407 F.Supp.3d 158, 170-71 [E.D.N.Y. 2017]. Plaintiff is required, however, to plead facts that give plausible support to his or her claim. *Id*.

The first three elements of the ADA prima facie framework are undisputed. FAC at 10, Dkt. No. 16. More specifically, the District is subject to the ADA; Plaintiff is disabled within the meaning of the statute; and Plaintiff is otherwise qualified to perform essential functions of her job with or without reasonable accommodations. *Id*. At issue is whether Plaintiff suffered adverse employment actions because of her disability. *Id*.

Plaintiff argues that the following constituted adverse employment actions based upon her disability: (1) Defendants' act of placing a counseling memorandum in her file; (2) a lack of reprimands and write-ups for Plaintiff's co-workers for similar conduct; (3) Plaintiff's requirement to do more work than her co-workers due to Defendants' inaction in relation to the Student with behavioral issues; (4) Plaintiff's requirement to undergo a psychological evaluation; (5) Plaintiff's placement on home assignment and requirement to remove her belongings from her class prior to her psychological evaluation; (6) Plaintiff's removal/blocking from the District's email network and denial of access to student files; (7) Plaintiff's re-assignment following her psychological evaluation with a less distinguished title; (8) Plaintiff's re-assignment of responsibilities to that of a newly hired employee; (9) removal of accommodations granted to her previously; and (10) harm to reputation and hinderance to Plaintiff's career advancement. FAC, Dkt. No. 16; Pl.'s Opp. at 6-7.

7

In support of dismissal, Defendants argue that criticisms, written warnings, Plaintiff's paid leave of absence followed by **r**estrictions on District's email network and student files during such absence, and Plaintiff's temporary re-assignment to a Math AIS position, are insufficient to support a cause of action for disability discrimination because an alteration of an employee's responsibilities, where she retains her workspace, title, job hours and salary, and continues to perform functions consistent with her job title, do not constitute adverse employment actions under the ADA. Defs.' Mot. Dis. at 10-15; Defs.' Rep. at 3-8. Defendants further argue that the District is statutorily empowered to mandate Plaintiff's medical examination; that the District's alleged failure to reimplement Plaintiff's temporary accommodations was a part of the temporary re-assignment; that Plaintiff returned to teaching fourth grade in September 2019 for the start of the 2019/2020 school year; and that Plaintiff does not state how the District's conduct is related to her disability, which the District has known about for many years. *Id*.

Under the ADA, a plaintiff suffers an adverse employment action when he or she experiences a materially adverse change in the terms and conditions of employment. *See Smith*, 286 F. Supp. 3d at 501 (quoting *526 Dechberry v. N.Y.C. Fire Dep't*, 124 F.Supp.3d 131, 147 (E.D.N.Y. 2015)). Employment actions "deemed sufficiently disadvantageous to constitute an adverse employment action include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation. *Id*.

Inference of discrimination is a flexible standard that can be met differently in different scenarios. *See Smith*, 286 F. Supp. 3d at 526 (*quoting Chertkova v. Conn. Gen. Life Ins. Co*., 92 F.3d 81, 91 (2d Cir. 1996). "No one particular type of proof is required to show that Plaintiff's

8

termination occurred under circumstances giving rise to an inference of discrimination." *Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-3625, 2013 WL 3968748, at 6 (E.D.N.Y. July 30, 2013) (citations omitted). To prove an alleged adverse employment action occurred under circumstances giving rise to an inference of discrimination, i.e., because of her disability, a plaintiff need only give plausible support to a minimal inference of discriminatory motivation. *Stinnett v. Delta Air Lines, Inc.*, 278 F.Supp.3d 599, 611 (E.D.N.Y. 2017). Nonetheless, "a discrimination complaint ... must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *Dooley v. JetBlue Airways Corp.*, 636 Fed.Appx. 16, 20 (2d Cir. 2015) (Summary Order) (q*uoting EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)) (alteration in original). Plaintiff may provide direct evidence of intent to discriminate or indirect circumstances giving rise to an inference of discrimination. *Stinnett*, 278 F.Supp.3d at 611; *Ferraro v. New York City Dep't of Educ.*, 404 F. Supp. 3d 691 (E.D.N.Y. 2017), aff'd, 752 F. App'x 70 (2d Cir. 2018) (holding that plaintiff's disability discrimination claim, premised upon his alleged diagnosis of multiple sclerosis, fails because the plaintiff failed to provide any direct evidence of discrimination, "such as inflammatory or discriminatory comment's regarding Plaintiff's disability," or any indirect evidence of discrimination).

   1. **Change in Title**

In *Francis v. Elmsford School Dist*, 263 Fed. Appx. 175 (2d. Cir. 2008), the Second Circuit held that a teacher's transfer from "teaching second grade in a classroom to teaching Academic Intervention Services ("AIS," somewhat comparable to special education) in a hallway" did not constitute an adverse employment action because the school had a legitimate non-discriminatory reason for the transfer. The main reason behind the transfer was the

9

teacher's teaching concerns about a class she taught a year before her transfer, namely, her "attempt to retain two students in second grade, precipitating parental complaints, scrutiny of her teaching methods, and the removal of one student from her class." *Francis*, 263 Fed. Appx. at 177. The court also held that plaintiff failed to show that such transfer was discriminatory. *Id*.

In *Kelly v. Huntington Union Free School Dist.*, No. 09–CV–2101 (JFB)(ETB), 2012 WL 1077677 at 16 (E.D.N.Y 2012), it was held that merely calling a new teaching role a "step down" was insufficient to demonstrate an adverse employment action, if plaintiff fails to show how her position as a regular teacher is less prestigious or how she would be less eligible for advancements in a regular teacher position. *See also Worrell v. New York City Dept. of Educ.*, 140 F.Supp.3d 231, 238 (E.D.N.Y. 2015). The Court further held that although it was not the sole factor in determining whether plaintiff was subjected to an adverse employment action, it was important to consider that plaintiff would receive the same compensation and benefits in her new position as she did in her old title. *See Kelly,* 2012 WL 1077677 at 16.

Here, upon reviewing the pleadings, and construing the Complaint in a light most favorable to Plaintiff, the Court finds that Plaintiff has not adequately pled her discrimination claims against the District under the ADA. *Lebowitz,* 407 F. Supp. 3d at 170-71; *Leon v. New York City Dept. of Educ.*, 612 Fed. Appx. 632, 634 (2d. Cir. 2015). More specifically, Plaintiff has not sufficiently pled that the District took adverse employment actions based on her disability inasmuch as her employment was not terminated, there was no reduction in her salary, and Plaintiff has not even attempted to explain how the work she was assigned was outside the scope of her duties. *Sosa v. New York City Department of Education*, 368 F. Supp. 3d 489, 520 (E.D.N.Y. 2019). Mere re-assignment of job duties does not constitute adverse employment action, especially when the employer has a legitimate reason for such re-assignment. *Francis*,

10

263 Fed. Appx. at 177 (holding that transfer to an "AIS" title did not constitute an adverse employment action because the school had a legitimate non-discriminatory reason for the transfer). Here, the District re-assigned Plaintiff's title and responsibilities based upon Dr. Solomon's recommendations and findings that Plaintiff suffered from neurological and cognitive changes resulting from her MS, and that Plaintiff was at moderate risk of engaging in unsafe behavior in her classroom. FAC at 8, Dkt. No. 16. Plaintiff also does not show whether and/or how her new title is "less distinguished." *Kelly,* 2012 WL 1077677 at 16. Plaintiff does not indicate if the Math AIS position has less requirements for hiring as opposed to her previous title. *Id*. Plaintiff conclusively states that her title and responsibilities were diminished, her reputation was harmed, and her opportunities at career advancement were diminished but includes no factual basis for her allegations, such as what her responsibilities consisted of during her temporary reassignment, or how her assignment actually impacted her reputation or potential for career advancement. *Id*. Thus, this Court determines that change in Plaintiff's title did not constitute an adverse employment action by the District.

   2. **Medical Evaluation**

In addition, the ADA prohibits employers from making inquiries as to whether an employee has a disability or as to the nature or severity of a disability unless such examination or inquiry is shown to be job-related and consistent with business necessity. 42 U.S.C.A. § 12112(d)(4)(A). In instances where, as here, the employer's stated concerns were reasonable, well documented, and supported by recommendations of its own psychologists, a medical examination is warranted. *Ferraro v. New York City Department of Education*, 404 F. Supp. 3d 691, 711 (E.D.N.Y. 2017). Thus, the District did not discriminate against Plaintiff based on her disability when it referred Plaintiff for a medical evaluation based upon Dr. Solomon's

11

recommendations that Plaintiff suffered from neurological and cognitive changes resulting from her MS, and that Plaintiff was at a risk of demonstrating unsafe behavior in her classroom.

### 3. Criticisms and Counselling Memorandum

"It is well established . . . that criticisms, and even written warnings, do not constitute adverse employment action where there is no diminution in pay, job status, or benefits." *Betterson v. HSBC Bank, USA, N.A.*, 139 F. Supp. 3d 572, 587 (W.D.N.Y. 2015), aff'd, 2016 WL 5341996 (2d Cir. Sept. 22, 2016) (citations omitted). Criticism of an employee in the course of evaluating and correcting her work is not, in itself, a materially adverse employment action. *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200 (E.D.N.Y. 2014). Counseling memoranda in furtherance of an employee's work, without more, also do not constitute adverse employment actions. *See e.g., Williams v. New York City Housing Authority*, 335 Fed. Appx. 108 (2d. Cir. 2009); *Cotterell v. Gilmore*, 64 F. Supp. 3d 406, 425 (E.D.N.Y. 2014). Here, Defendants believed that it was Plaintiff and not the Student, who was the main problem. Thus, the District did not engage in adverse employment actions when it (1) placed a counseling memorandum in Plaintiff's personnel file following her manner of handling the Student's behavioral issues; or (2) admonished Plaintiff after she sent the letter to the Student's parents in June 2018.

### 4. Paid Leave of Absence

An employee's paid leave of absence does not constitute an adverse employment action regardless of whether it was voluntary or involuntary. Indeed, courts have regular held that a plaintiff's paid leave of absence does not constitute an adverse employment action. *See e.g.*, *Wagner v. County of Nassau*, No. 11–CV–1613(JS) (ARL), 2014 WL 3489747 at 9 (E.D.N.Y. July 11, 2014); *Ghaly v. U.S. Dept. of Agriculture*, 739 F.Supp.2d 185, 199 (E.D.N.Y. 2010).

12

Thus, Defendants did not discriminate against Plaintiff when they sent her on a paid leave of absence following Dr. Randall's evaluation.

### 5. Heavier workload

A showing of disparate treatment, i.e., a showing that the employer treated plaintiff "less favorably than a similarly situated employee outside his protected group"—is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case. *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d. Cir. 2003). To establish disparate treatment, an employee must show that he or she was similarly situated in all material respects to the individuals with whom he or she seeks such comparison. *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014). Courts within the Second Circuit have regularly granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at the company, how their conduct compared to plaintiff's or how they were treated differently by defendants. *See e.g., Johnson v. Andy Frain Services, Inc.*, 638 Fed. Appx. 68, 70 (2d. Cir. 2016); *Haggood v. Rubin & Rothman*, LLC, No. 14–cv–34L (SJF) (AKT), 2014 WL 6473527 at 11-12 (E.D.N.Y. Nov. 17, 2014). Here, Plaintiff fails to offer allegations regarding the teachers with whom she wishes to compare herself. The complaint simply offers conclusory statements that Plaintiff had to do more work than her counterparts because the District failed to address disruptive conduct by a student in her class, without identifying who the alleged comparators are, how they are similarly situated, or alleging any plausible basis for connecting this alleged additional work to Plaintiff's disability. Thus, Plaintiff's contention that she was required to do more work than her co-workers likewise fails to give rise to a plausible inference of discrimination.

Finally, even if any of the claimed injuries could be construed as adverse employment actions under the ADA, Plaintiff has failed to plausibly allege that the adverse actions were taken as a result of her disability, which the School District has admittedly known about "for many years." FAC at ¶ 31. Bare, conclusory statements of discriminatory animus, which is all the amended complaint here contains, are simply insufficient to state a valid claim under the ADA. *See, e.g. Clyburn v. Shields*, 33 F. App'x 552, 555 (2d Cir. 2002) ("bare allegation [that defendant was motivated by plaintiff's protected membership], without any facts alleged in support, is insufficient to state a claim for intentional discrimination"); *Ochei v. The Mary Manning Walsh Nursing Home Co.*, 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011) ((the false syllogism, "I am (fill in the protected class of which the plaintiff is a member); something bad happened to me at work; therefore the bad thing happened because I am (fill in the protected class)" is insufficient to support any inference of discrimination.) (quoting *Grillo v. N.Y. City Transit Auth.*, 291 F.3d 231 (2d Cir. 2002)).

Therefore, this Court respectfully recommends that Plaintiff's ADA claims be dismissed for Plaintiff's failure to sufficiently allege disability discrimination.

### B. Plaintiff's Failure to Accommodate Claim under the ADA

In the FAC, Plaintiff alleges that Defendants failed to accommodate her disability needs during her reassignment. FAC at 9-10. To establish a claim for failure to accommodate under the ADA, a plaintiff must demonstrate that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at

issue; and (4) the employer has refused to make such accommodations." *Stinnett*, 278 F.Supp.3d at 615.

Here, Plaintiff does not allege that she requested an accommodation during her limited reassignment and that the District refused to make such accommodations. Nor does she allege that an accommodation was required in order for her to fulfill her duties in her new temporary position. The absence of such allegations is fatal to her failure to accommodate claim. *See Stinnett*, 278 F.Supp.3d at 615.

Furthermore, Plaintiff has failed to oppose Defendants' arguments for dismissal of the failure to accommodate claim under the ADA. "A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Walter v. Queens Coll.*, 390 F. Supp. 3d 382, 398, n. 5 (E.D.N.Y. 2019). Therefore, this Court recommends dismissing Plaintiff's failure to accommodate claims under the ADA. *Walter*, 390 F. Supp. 3d at n. 5.

### C. Plaintiff's Discrimination Claims Under the NYEL

Plaintiff also brings her cause of action for discrimination against Defendants under New York law. A federal district court has "original jurisdiction" over all civil actions arising under the laws of the United States, 28 U.S.C. § 1331. It is well established that where federal discrimination claims are dismissed, declining to exercise supplemental jurisdiction over remaining state claims is appropriate. *Sosa*, 368 F. Supp. 3d at 526. Here, this Court has recommended dismissal of the federal ADA claims. It is, therefore, respectfully recommended

15

that the Court decline to exercise supplemental jurisdiction and dismiss the remaining NYEL state law claims without prejudice.[1]

### D. CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendants' Motion to Dismiss be GRANTED.

### E. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*,

---

[1] While it is not necessary to reach the issue, the Court would also recommend dismissal against the District and Superintendent Gierasch because Plaintiff admittedly did not serve a notice of claim. N.Y.E.L. § 3813(1); Pl.'s Opp. at 9-10. In light of the Court's recommendation for dismissal of ADA claims against the District, the Court also recommends dismissal of NYEL claims against Defendant Devine for Plaintiff's failure to state a cause of action. *See Hernandez v. International Shoppes*, 100 F.Supp.3d 232, 256 (E.D.N.Y. 2015) (holding that the standard for assessing discrimination claim is the same under ADA and NYEL).

16

No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also*

*Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
       February 28, 2022